**In re Louis J. PEARLMAN, et al., Debtor[s].**

**No. 6:07–bk–00761–KSJ.**

United States Bankruptcy Court, M.D. Florida, Orlando Division.

Dec. 26, 2012.

---

Louis J. Pearlman, Windermere, FL, Pro se.

## *MEMORANDUM OPINION GRANTING TRUSTEE'S OMNIBUS MOTION FOR ORDER ESTABLISHING NET INVESTMENT METHOD*

KAREN S. JENNEMANN, Chief Judge.

Louis J. Pearlman and ten Pearlman-related entities are the debtors in these related cases that are jointly administered and substantively consolidated.[1] Debtor, Louis J. Pearlman, along with some of his co-Debtor companies—Trans Continental Airlines ("TCA"), Trans Continental Records ("TCR"), and Louis J. Pearlman Enterprises ("Enterprises")—bilked thousands of investors out of hundreds of millions of dollars through the perpetration of different Ponzi schemes. One was known as the "Employee Investment Savings Account" (the "EISA Program"), under which TCA raised over $300 million from hundreds of investors nationwide. Pearlman, his broker intermediaries, and others at TCA allegedly promised investors above-market rates of return for their investments and that their investments were FDIC insured. Neither representation was true. Instead, Pearlman and his cronies pocketed much of the investment funds and used new investments to repay, or to pay interest to, prior investors in the EISA Program.

Soneet Kapila is the Chapter 11 Trustee[2] appointed in these cases due to Pearlman's fraudulent acts in using the Debtors to perpetrate the Ponzi schemes. The Trustee has spent over five years administering the bankruptcy and is now certain that he will distribute monies to general unsecured creditors.[3] The Trustee however has received more than 2,500 investor claims totaling over $1 billion from investors in Debtors' Ponzi scheme. Many investors have filed proofs of claim attaching their most recent account statements to show they are owed interest and dividends earned on their investments. However, to administer these claims and distribute funds in an equitable and efficient manner, the trustee seeks an order approving the "Net Investment Method," instead of using the last account statements, to calculate allowed investor claims.[4] Attached as Exhibit A is a list provided by the trustee of all investor claims subject to this proposed application

1. Doc. No. 228. The Debtors in these jointly administered cases are: Louis J. Pearlman; Louis J. Pearlman Enterprises, Inc.; Louis J. Pearlman Enterprises, LLC; TC Leasing, LLC; Trans Continental Airlines, Inc. ("TCA"), Trans Continental Aviation, Inc.; Trans Continental Management, Inc.; Trans Continental Publishing, Inc.; Trans Continental Records, Inc.; Trans Continental Studios, Inc.; and Trans Continental Television Productions, Inc. (collectively, the "Debtors").

2. Doc. No. 26 (Order Directing Appointment of Chapter 11 Trustee); Doc. No. 46 (Order Approving Appointment of Trustee).

3. Doc. No. 3824 Trustee's Omnibus Motion for Order Establishing the Net Investment Method Approach as the Appropriate Method for Calculating Allowed Investor Claims.

4. *Id.*

The Net Investment Method credits the amount of cash actually deposited by an investor into an account with the Debtors, and then subtracts any amounts actually withdrawn as a return of principal, profits, or interest. This methodology allows each investor to receive a refund of their initial investments but does not give credit for amounts greater than the initial investment, because amounts paid over and above an investor's initial investment were not actually earned.[5] The earning statements Debtors gave to investors that showed they were entitled to additional monies were false and misleading. Any interest or dividends reflected on those amounts were fictitious. The Trustee opposes using the "last statement method" of determining claim amounts.

The Trustee argues using the Net Investment Method of distribution is a more fair and equitable way of recognizing and allowing investor claims in Ponzi scheme cases. At a hearing held on July 11, 2012, the Court directed the Trustee to file this omnibus motion establishing the Net Investment Method and stated that any objection to the Trustee's proposed applica-

tion of this approach should include a legal memorandum setting forth an alternative method of determining an allowed claim and demonstrating why such alternative methodology should be adopted. No objections have been filed.

The Court finds the Net Investment Method is the appropriate methodology to apply to the investor claims in this case. The issue was recently addressed by the Bankruptcy Court for the Southern District of New York in *In re Bernard L. Madoff Investment Securities, LLC*,[6] and affirmed by the Second Circuit Court of Appeals.[7] The bankruptcy court approved the trustee's use of the Net Investment Method because it allowed the trustee to unwind, rather than legitimize, Mr. Madoff's fraudulent Ponzi scheme.[8] Understandably, the investors in that case argued against the Net Investment Method because they had justifiable expectations of profits, as reflected in their most recent account statements.[9] The court recognized, however, that those financial positions were only as good as the paper they were written on because, in actuality, they

---

5. *See* Adversary Proceeding No. 6:09–ap–00318–KSJ stating:

In Florida, "value" is given if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied. Thus, loan repayments for a present or antecedent debt normally constitute "reasonably equivalent value" to debtors because, in exchange, a debtor receives "a reduction in the principal and interest of their loan by an equal amount." In the case of a Ponzi scheme, defrauded investors give "value" back to the debtor to the extent a debtor repays the principal amount of its obligation to the investor, but no value is attributed to payments made to investors in excess of a return of principal. "Any transfer up to the amount of the principal investment ... is made for value.... and is not subject to recovery by the debtor's trustee." "Transfers over and above the return of the investor's principal investment—i.e.,

for "fictitious profits—are not made 'for value'" and may be subject to recovery by the trustee.

6. *In re Bernard L. Madoff Investment Securities, LLC*, 424 B.R. 122 (Bankr.S.D.N.Y.2010).

7. *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229 (2d Cir.2011) *cert. dismissed,* —— U.S. ——, 132 S.Ct. 2712, 183 L.Ed.2d 65 (U.S.2012) and *cert. denied,* —— U.S. ——, 133 S.Ct. 24, 183 L.Ed.2d 675 (U.S.2012) and *cert. denied,* —— U.S. ——, 133 S.Ct. 25, 183 L.Ed.2d 675 (2012).

8. *In re Bernard L. Madoff Investment Securities, LLC*, 424 B.R. at 140 (stating "it would be simply absurd to credit the fraud and legitimize the phantom world created by Madoff when determining Net Equity.").

9. *Id.* at 134–35.

were a fictitious perpetuation of Madoff's Ponzi scheme and "did not reflect actual securities positions that could be liquidated."[10]

The Second Circuit Court of Appeals affirmed the bankruptcy court's application of the Net Investment Method, acknowledging the Ponzi scheme's account statements "reflected 'arbitrary amounts that necessarily had no relation to reality,'"[11] and that the Net Investment Method is "more harmonious with provisions of the Bankruptcy Code that allow a trustee to avoid transfers made with the intent to defraud ... and avoid placing some claims unfairly ahead of others."[12] Other courts have followed the *Madoff* decisions to the same conclusion.[13]

The Court agrees with the rationales for accepting a net investment methodology instead of an account statement methodology. First, by definition a Ponzi scheme generates returns to investors not from legitimate business activity but through the influx of resources from new defrauded investors. Because each and every dollar is obtained by fraud, allowing some investors to stand behind the Ponzi scheme fiction would condone it, to the detriment of other defrauded investors, and carry it to a "fantastic conclusion."[14] Those investors who were unfortunate enough to invest their hard-earned money at a later date not only contributed to the "profits" earned by earlier investors, but they also perpetuated the scheme's existence. Where individuals have been similarly defrauded, all should recover their principal before any one of them recovers profits or interest.[15] Thus, although early investors who have withdrawn amounts greater than their initial investment will receive no distribution under the Net Investment Method, at least they have received a return of some or all of their principal.[16]

Second, recognizing returns from an illegal financial scheme is contrary to public policy inasmuch as it legitimizes the proscribed investment scheme.[17] The claims administration process instead should focus on the cash actually invested and the withdrawals actually made, rather than on the fraudulent account statement prepared in connection with a criminal enterprise and used to deceive the masses.

As Mr. Pearlman admitted in his guilty plea, he never intended to use his investors' funds to make legitimate investments or to engage in legitimate operations that would earn a profit. Therefore, the Court will apply the Net Investment Method to the investors' claims, which will reduce the proofs of claim of those investors who received interest or dividend payments, because those payments were, by their very nature, illegal and fictitious. An order

10. *Id.* at 135.

11. *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 241.

12. *Id.* at 242, n. 10.

13. *In re Deluca*, 35 Misc.3d 1210(A), 950 N.Y.S.2d 722 (Sur.2012) (following the net investment method established in the Madoff case); *Cmty. First Bank v. First United Funding, LLC*, 822 N.W.2d 306, 311 (Minn.Ct.App. 2012) (explaining that it "adopted a method-ology that [the court] believed would treat each of the parties as similarly situated victims.").

14. *S.E.C. v. Credit Bancorp Ltd.*, 2000 WL 1752979, at *40 (S.D.N.Y.2000).

15. *Id.*

16. *S.E.C. v. Capital Consultants, LLC*, 2002 WL 32502450, *2 (D.Or. Dec. 5, 2002).

17. *Id.*

consistent with this memorandum opinion shall be entered.

### ORDER GRANTING TRUSTEE'S OM-NIBUS MOTION FOR ORDER ES-TABLISHING NET INVESTMENT METHOD

Soneet Kapila, the Chapter 11 trustee, has spent over five years administering the Debtors' bankruptcies, and is now certain he will make a distribution to general unsecured creditors.[1] The Trustee has received more than 2,500 investor claims totaling over $1 billion from investors in Debtors' Ponzi scheme, and seeks an order approving the "Net Investment Method," instead of using the last account statements, to calculate the investors' allowed claims. Consistent with the Memorandum Opinion Granting Trustee's Omnibus Motion for Order Establishing the Net Investment Method (Doc. No. 3918), it is

**ORDERED:**

1. The Trustee's Motion Establishing the Net Investment Method to determine investors' claims (Doc. No. 3824) is granted.

2. The Net Investment Method shall *credit the amount of cash actually deposited* by an investor into an account with the Debtors and then subtract any amounts actually withdrawn as a return of principal, profits, dividends or interest.

3. Any proofs of claim seeking an amount greater than the amount of an investor's initial investment shall be reduced to the amount of the initial investment to determine the amount of an investor's allowed claim.

4. The Net Investment Method of accounting for determining investors' claims applies to all investors listed in Exhibit A

attached to the related Memorandum Opinion.

DONE AND ORDERED.

---

1. Doc. No. 3824 Trustee's Omnibus Motion for Order Establishing the Net Investment Method Approach as the Appropriate Method for Calculating Allowed Investor Claims.